**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, INC., | |
| Plaintiff, | CIVIL ACTION NO.: 4:20-cv-013 |
| v. | |
| WEBBER'S TRANSPORTATION, LLC, *et al.*, | |
| Defendants. | |

**O R D E R**

Presently before the Court is Plaintiff American Service Insurance Company, Inc.'s ("American Service") Motion for Summary Judgment.  (Doc. 63.)  This case arises out of three state suits, two filed by Defendant Joyce Johnson-Copeland and one filed by her late husband, Quincy Copeland, against certain Defendants in this case.[1]  Johnson-Copeland and her husband (collectively, the "Copelands") brought the state suits to recover damages stemming from a motor-vehicle collision between Johnson-Copeland and Defendant Quantella Morrall, an employee of Defendant Webber's Transportation, LLC ("Webber's LLC").  (Docs. 31-1, 31-5, 31-8.)  Prior to the collision, American Service issued a commercial auto insurance policy to Webber's LLC, (doc. 31-10), which is owned by Defendants Alexis Webber and Rodney Webber, (doc. 63-11, p. 3; doc. 69-1, p. 3).  American Service filed this action seeking a declaration that it has no legal obligation

---

[1]  American Service named Quincy Copeland as a defendant in this action.  (Doc. 31.)  However, Quincy Copeland died on September 22, 2021.  (See doc. 53, p. 1.)  On American Service's motion, (doc. 92), the Court replaced Quincy Copeland with Johnson-Copeland, who is the personal representative of his estate, (doc. 93).  As such, Johnson-Copeland is a defendant both in her individual capacity and as the administrator of the estate of Quincy Copeland.  (See id.)

under the policy to defend or indemnify Defendants Webber's LLC, Alexis Webber, Rodney Webber (collectively with Webber's LLC, the "Webber Defendants") or Morrall from or against the Copelands' state claims.  (See doc. 1 (original complaint); doc. 31 (Amended Complaint).) American Service filed the at-issue Motion for Summary Judgment, requesting summary judgment with respect to its claims for declaratory relief. (Doc. 63.)  The issues have been fully briefed by the parties.  (Docs. 63-1, 69, 71, 81, 91.)  For the reasons stated below, the Court **GRANTS** American Service's Motion for Summary Judgment.[2]  (Doc. 63.)

## BACKGROUND

### I.   Admissions of Facts Set Forth in American Service's Statement of Material Facts

Before setting forth the factual background, the Court must address American Service's argument that the facts set forth in its Statement of Material Facts ("SMF") must be deemed admitted because Defendants failed to dispute them.  (See doc. 81, pp. 2–5.)  Southern District of Georgia Local Rule 56.1 ("L.R. 56.1") requires a party moving for summary judgment to file, "in addition to the brief, . . . a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof." S.D. Ga. Local Rule 56.1.  Under L.R. 56.1, "[e]ach statement of material fact shall be supported by a citation to the record."  Id.  Pursuant to L.R. 56.1, American Service filed a SMF in conjunction with its Motion for Summary Judgment and supporting brief.  (Doc. 63-11.)  American Service's SMF complies with L.R. 56.1 because each statement of fact is supported with a citation to the record.  (See id. at pp. 1–12.)

---

[2]  American Service also filed two motions for default judgment: (1) a Motion for Default Judgment as to Discovery Sanction, (doc. 64), and (2) a Motion for Default Judgment as to Defendant Quantella J. Morrall, (doc. 65).  Johnson-Copeland also filed a Motion for Hearing Regarding American Service's Motion for Summary Judgment.  (Doc. 83.)  Because the Court is granting American Service's Motion for Summary Judgment, the Court **DENIES as moot** American Service's Motions for default judgment.  (Docs. 64, 65.) Additionally, the Court **DENIES** Johnson-Copeland's request for a hearing.  (Doc. 83.)

Federal Rule of Civil Procedure 56(c) requires "[a] party asserting that a fact cannot be or is genuinely disputed [to] support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Furthermore, pursuant to Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of facts as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Moreover, this Court's Local Rule 56.1 provides,

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, in addition to the brief, there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof . . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted *unless controverted by a statement served by the opposing party*.

(emphasis added).

The Webber Defendants filed only a brief in opposition to the Motion for Summary Judgment, and nowhere in the brief do they offer *any* sort of response indicating whether they admit or deny the material facts asserted by Plaintiff in its Statement of Material Facts.[3]  (See doc. 71.)  As such, the Webber Defendants have not complied with Rule 56(c) and Local Rule 56.1, and American Service's SMF is considered undisputed by the Webber Defendants for purposes of the Motion.  See, e.g., BMU, Inc. v. Cumulus Media, Inc., 366 F. App'x 47, 49 (11th Cir. 2010) (finding that the non-moving party's failure to submit a response to the moving party's statement of undisputed material facts constituted an admission of those facts); Carter v. 3M, No. 2:18-cv-100, 2019 WL 4131338, at *1 (S.D. Ga. Aug. 29, 2019) ("Plaintiff has not responded to Warren's Statements of Undisputed Facts.  Thus, pursuant to [L.R.] 56.1, these facts are deemed admitted for the purpose of Warren's Motion for Summary Judgment.").

---

[3] Instead, the Webber Defendants' brief focuses almost exclusively on arguing that the Motion for Summary Judgment has been prematurely filed.  (See doc. 71.)

Unlike the Webber Defendants, Johnson-Copeland—in addition to filing a brief in opposition to the Motion for Summary Judgment—filed a stand-alone document entitled "Response to Plaintiff's Statement of Material Facts to Support its Motion for Summary Judgment." (Doc. 69-1.)  However, this Response to American Service's SMF includes several generalized or conclusory denials without citations to the record.  (See e.g., doc. 69-1, ¶¶ 3, 4, 6, 9, 12–13, 17, 22, 27–28.)  "[G]eneralized denials, provided without citations to particular parts of materials in the record, are insufficient to satisfy [Rule 56(c)]."  Allen v. United States, No. 1:15-cv-147, 2018 WL 934895, at *1 n.2 (S.D. Ga. Feb. 16, 2018).  Indeed, "[w]here the party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to [Local Rules], such fact is deemed admitted by the respondent."  Futch v. Chatham Cnty. Det. Ctr., No. 4:10-cv-192, 2012 WL 1557336, at *2 (S.D. Ga. May 2, 2012) (quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302 (11th Cir. 2009)); see also Encompass Home & Auto Ins. Co. v. Stevens Hale & Assocs., No. 4:19-cv-79, 2022 WL 3330150, at *1 n.1 (S.D. Ga. Aug. 11, 2022).  Additionally, although Johnson-Copeland attempts to support some of her denials by citing to Alexis Webber's deposition testimony, (see e.g., doc. 69-1, ¶¶ 24, 29, 32–33), the cited portions of the deposition transcript are not in the record.[4]  Thus, these citations are insufficient under Rule 56(c), which requires a party "asserting that a fact . . . is genuinely disputed [to] support the assertion by . . . citing to particular parts of materials *in the*

---

[4]  The only portions of the transcript of Alexis Webber's deposition that are in the record is an excerpt that American Service attached as an exhibit to its Motion for Summary Judgment, (doc. 63-2), and an excerpt that American Service attached to its previously-adjudicated Motion to Compel, (doc. 57-6); neither Johnson-Copeland nor any other Defendant has provided the full transcript or any additional portions. Pertinently, the excerpts that are in the record do not contain pages 27–30, 48, 109–110, and 112 of the transcript, which are the pages Johnson-Copeland cites to support her denials.  (See generally docs. 57-6, 63-2; see also doc. 69, p. 3; doc. 69-1, ¶¶ 24, 29, 32–33.)

*record*." Fed. R. Civ. P. 56(c) (emphasis added); <u>see, e.g.</u>, <u>Jay v. Auburn Univ.</u>, 829 F. App'x 393, 397 n.6 (11th Cir. 2020) (per curiam) ("[A party] cannot fault the [court] for failing to consider evidence not in the record."); <u>see also</u> note 6, <u>infra</u> (discussing in greater detail why certain facts in American Service's SMF are being admitted on this basis).  As such, many of Johnson-Copeland's denials are insufficient, and the corresponding facts set forth in American Service's SMF will therefore be deemed undisputed by Johnson-Copeland.

Notwithstanding the fact that many of American Service's SMFs may be deemed undisputed or admitted, the Court still must determine whether there is sufficient record support for the movant's version of the facts and whether a genuine issue of material fact precludes the entry of summary judgment in American Service's favor.  <u>See</u> <u>Osborn v. Whites & Assocs. Inc.</u>, No. 1:20-cv-02528-TWT-AJB, 2021 WL 6113656, at *2 n.3 (N.D. Ga. Nov. 16, 2021), *report and recommendation adopted*, No. 1:20-CV-2528-TWT, 2021 WL 6113625 (N.D. Ga. Dec. 3, 2021) ("[S]tatements of fact may be deemed true only so far as they are supported by the evidentiary materials. . . .") (citing <u>United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.</u>, 363 F.3d 1099, 1101 (11th Cir. 2004)); <u>Nieves v. Moody</u>, No. 3:19-cv-002, 2020 WL 5034141, at *2 (S.D. Ga. July 30, 2020), *report and recommendation adopted*, No. 3:19-cv-002, 2020 WL 5028227 (S.D. Ga. Aug. 25, 2020) ("Because Plaintiff did not provide a statement of material facts directly refuting Defendant's SMF, the Court deems admitted all portions of Defendant's SMF having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56."); <u>see also</u> <u>Reese v. Herbert</u>, 527 F.3d 1253, 1269 (11th Cir. 2008) ("[A]fter deeming the movant's statement of undisputed facts to be admitted pursuant to Local Rule 56.1, the district court must then review the movant's citations to the record to determine if there is, indeed, no genuine issue

of material fact.") (internal quotations omitted).  Indeed, the Court "must make an independent review of the record before deciding Plaintiff's motion."  United States v. Delbridge, No. 1:06-CV-110 (WLS), 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008); see also United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004) ("The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials."). However, when doing so, the Court need not "distill every potential argument that could be made based upon the materials before it on summary judgment." Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995).

## II.      Factual Background

### A.      Webber's LLC's Application for Insurance and the Policy Issued by American Service

Defendant Webber's LLC, which is owned by Defendants Alexis and Rodney Webber, provided non-emergency medical transportation services.  (See doc. 63-2, pp. 10, 12–13; see also doc. 31-9, pp. 6, 17 (application for insurance listing "[n]on-emergency medical transportation" in "Nature of Business" section).)  On February 12, 2018, Alexis Webber signed and executed an application for auto insurance on behalf of Webber's LLC and submitted it to American Service with the help of Webber's LLC's insurance agent, Sovereign Risk Solutions, LLC ("Sovereign"). (Doc. 63-11, p. 4; doc. 69-1, p. 4; see doc. 31-9, pp. 1–24.)  The application lists the following individuals in the section instructing the applicant to "list all drivers, including family members that will drive company vehicles, and employees who drive [their] own vehicles on company business": Alexis Webber, Angel White, and Robert Williams.  (Doc. 31-9, p. 15.)  Notably, the application did not list Defendant Quantella Morrall as a driver.  (See id.)  Additionally, the

application sought coverage for four vehicles, including a 2006 Chevrolet Express, VIN No. 1GBJG31U161139337 (the "Vehicle").  (Id. at p. 17.)

American Service issued a commercial auto insurance policy to Webber's LLC for the period covering February 10, 2018, to February 10, 2019 (the "Policy").  (Doc. 31, ¶ 42; docs. 35–39, ¶ 42; see docs. 31-10, pp. 1–90.)  The Policy provides that American Service "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."  (Doc. 31-10, p. 24.)  The Vehicle is listed in Item Three of the Policy's Business Auto Declarations, which provides the "schedule of covered autos [Webber's LLC] own[s]."  (Id. at p. 17; see id. at pp. 9, 13.)  The following persons qualify as "insureds" under the Policy:

(a)     [Webber's LLC] for any covered "auto", but only when the covered "auto" is driven by an approved driver described in paragraph **b.** of this subsection.[5]

(b)     Any driver authorized by a licensing body as a taxicab driver, limousine driver, or driver of any other public livery vehicle, while operating a covered "auto" with [Webber's LLC's] knowledge and consent under [Webber's LLC's] operating authority.  **Only such drivers listed by [Webber's LLC], as of the date this policy begins, on the driver schedule in the original application signed by [Webber's LLC], and not otherwise excluded, are covered as of the date this policy begins.**

(Id. at p. 68 (emphasis in original) (endorsement to policy entitled "Who is an Insured Redefined").)

The Policy also states:

_____

[5]  The Policy uses the terms "you" and "your" to refer to the "named insured," i.e., Webber's LLC, (doc. 31-10, p. 23; see id. at p. 14 (indicating that Webber's LLC is the named insured)), and the terms "we," "us," and "our" to refer to "the company providing this insurance," i.e., American Service, (id. at p. 23). For simplicity, when setting forth or referring to the Policy's provisions, the Court has substituted (occasionally in brackets) the terms "Webber's LLC" and "Webber's LLC's" for the terms "you and "your," respectively.  The Court similarly has substituted the terms "American Service" for the terms "we" and "us," and the term "American Service's" for the term "our."

> No coverage will apply to any new driver that [Webber's LLC] wish[es] to place in service after the policy begins until [Webber's LLC] report[s] that driver to [American Service].  Upon receipt, [American Service] will advise in writing that he or she is acceptable to [American Service] and identify that he or she is now considered by [American Service] to be an authorized driver covered by the [P]olicy.  Use of a covered "auto" by an unauthorized driver prior to written approval is not covered under [Webber's LLC's] [P]olicy.  Coverage on any such driver newly placed in service will become effective as of the date and time specified by the notice advising they are acceptable.  Coverage will not begin prior to the date and time specified.

(Id.)

Additionally, the Policy provides that American Service has "no duty to provide coverage under [the Policy] unless there has been full compliance with" certain duties and conditions (the "Notice Conditions").  (Id. at p. 30; see id. at pp. 30–32.)  For example, the Policy states, "In the event of 'accident', claim, 'suit' or 'loss', you must give [American Service] or [its] authorized representative prompt notice of the 'accident' or 'loss'."  (Id. at pp. 30, 48.)  If this requirement is "not satisfied by the 'insured' within 30 days of the date of the 'accident', [it] may be satisfied by an injured third party who, as the result of such 'accident', has a claim against the 'insured'."  (Id. at p. 48.)  "However, in this event, notice of a claim given by an injured third party must be mailed to [American Service]."  (Id.)  Furthermore, the Policy provides that Webber's LLC and "any other involved 'insured'" must, inter alia, "[i]mmediately send [American Service] copies of any request, demand, order, notice, summons or legal paper received concerning the claim or 'suit'."  (Id. at p. 30.)

## B.     The Collision and Underlying Lawsuits I, II, and III

On June 15, 2018, during the Policy's effective period, Defendant Morrall, an employee of Webber's LLC, was driving the Vehicle when she rear-ended Johnson-Copeland's vehicle (the "Collision").  (Doc. 63-2, pp. 6–7, 14, 19–20; see doc. 69-5, pp. 141–42.)  At the time of the Collision, Morrall was on her way to pick up a patient for a medical appointment on behalf of

Webber's LLC.  (Doc. 63-2, p. 20.)  On October 17, 2018, Johnson-Copeland sued Webber's LLC and Morrall in state court, seeking to recover damages for the injuries she allegedly incurred during the Collision due to Morrall's negligence ("Underlying Lawsuit I").  (Doc. 31, ¶ 12, docs. 35–39, ¶ 12; see doc. 31-1, pp. 4–6.)  Johnson-Copeland served Morrall and Webber's LLC the complaint and discovery in Underlying Lawsuit I on October 23 and November 29, 2018, respectively.  (Doc. 31, ¶¶ 15–16, docs. 35–39 ¶¶ 15–16; doc. 69-1, p. 11; see docs. 31-2, 31-3.)  Neither Webber's LLC nor Morrall answered the complaint or responded to discovery, so Johnson-Copeland moved for a default judgment.  (Doc. 63-11, pp. 9–10; doc. 31, ¶¶ 18–19; docs. 35–39 ¶¶ 18–19; see also doc. 31-4.)  The state court entered a default judgment against Webber's LLC and Morrall on April 23, 2019, and, after a hearing, awarded Johnson-Copeland damages against them jointly and severally in the amount of $112,466.57.  (Doc. 63-11, p. 10; doc. 31, ¶¶ 19–24; docs. 35–39 ¶¶ 19–24; see also doc. 31-5.)  On August 21, 2019, Johnson-Copeland sued Defendants Alexis and Rodney Webber, seeking to pierce Webber's LLC's corporate veil and obtain judgment against them as the owners and officers of Webber's LLC ("Underlying Lawsuit II").  (Doc. 31, ¶¶ 28–29, docs. 35–39, ¶¶ 28–29; see doc. 69-1, p. 3; see also doc. 31-6, pp. 4–6.)  On March 13, 2020, Quincy Copeland sued Webber's LLC and Morrall for loss of consortium ("Underlying Lawsuit III" and, collectively with Underlying Lawsuits I and II, the "Underlying Lawsuits").  (Doc. 31, ¶¶ 38–40; docs. 35–39, ¶¶ 38–40; see doc. 31-8, pp. 2–5.)

### C.   Facts Pertinent to American Service's Notice of Morrall as a Driver, the Collision, and the Underlying Lawsuits

Prior to the Collision, the Webber Defendants did not report Morrall as a new driver to American Service or Sovereign, nor did American Service ever advise the Webber Defendants in writing that Morrall was an authorized driver covered under the Policy.  (Doc. 63-11, pp. 17–18; see doc. 63-2, pp. 8–9, 12–16, 19.)  Alexis Webber testified that she was made aware of the

Collision when Morrall contacted her on June 15, 2018, the day of the Collision.  (Doc. 63-11, pp. 9, 12; doc. 63-2, p. 11.)  American Service submitted verified interrogatories stating that they did not receive notice within 30 days of the accident from Webber Defendants.[6]  (Doc. 63-11, p. 9; see doc. 63-6, pp. 9–10, 13–14.)  In fact, Alexis Webber testified that she never communicated with American Service about the Collision.  (Doc. 57–6, p. 3 ("Q[.] Who would you have discussed the incident with? . . .  Any insurance company?  A[.] No.   Q[.] You haven't had any communications with any insurance company, including American, relating to this incident?  A[.] No.").)  Johnson-Copeland's Responses to American Service's Interrogatories indicate that her counsel did not notify American Service about the Collision because he was unaware of American Service's existence until February 2020, when American Service named her as a defendant in this lawsuit.  (Doc. 63-7, p. 4; see also doc. 7 (summons of Johnson-Copeland).)  At the earliest, American Service received notice of the Collision on October 15, 2019, when Webber's LLC sent

---

[6]  Accordingly, American Service's SMF states that the Webber Defendants "did not notify American Service of the Collision within 30 days of its occurrence." (Doc. 63-11, p. 9.)  Johnson-Copeland disputes this fact (set forth in Paragraph 24 of American Service's SMF) with a lengthy recitation about a purported phone call Alexis Webber made to American Service one or two days after the Collision.  (See doc. 69-1, pp. 9–11; see also doc. 69, p. 3.)  According to Johnson-Copeland, "[d]uring this telephone call, . . . [Webber's] LLC notified American Service that a collision had occurred[] [and] provided it with the involved vehicle's identification and VIN number." (Doc. 69-1, p. 10.)  Furthermore, Johnson-Copeland argues that American Service asserted that it "would handle the claim," gave Alexis Webber a "case number," and told her that they would contact her if they needed anything else.  (Id.)  Notably, Johnson-Copeland also cites this telephone call in an effort to refute Paragraphs 29, 32, and 33 of American Service's SMF, all of which concern when American Service was notified of and received papers pertaining to Underlying Lawsuits I and II.  (See id. at pp. 12–14.)  Crucially, however, the only evidence of the telephone call that Johnson-Copeland points to is Alexis Webber's deposition testimony.  (See id. at pp. 9–14.)  As discussed in Note 4, supra, the portions of Alexis Webber's testimony that Johnson-Copeland cites are not included in the record.  American Service is the only party that has filed excerpts from the transcript of Alexis Webber's deposition.  However, neither of American Service's filings included the specific pages cited by Johnson-Copeland, who neglected to submit any portion of the Alexis Webber deposition transcript as an exhibit to her Response.  (Compare doc. 69-1, pp. 9–14 (citing "Webber Dep." pages 27–30, 48, 109–10, 112), with docs. 57-6 (omitting the aforementioned pages), 63-2 (same).)  Accordingly, since the only evidence Johnson-Copeland cites to refute Paragraphs 24, 29, 32, and 33 of American Service's SMF is not in the record, Johnson-Copeland has failed to rebut these facts under L.R. 56.1 and Rule 56(c).  Therefore, the Court deems them admitted.  See Background Section I & note 4, supra.

American Service an e-mail concerning Johnson-Copeland's state suits.  (Doc. 63-11, pp. 9, 12; see doc. 63-6, pp. 9–10, 13–14.)  Additionally, although Morrall and Webber's LLC were served with the complaint and discovery in Underlying Lawsuit I, (see docs. 31-2, 31-3), American Service was not immediately provided copies of any legal papers pertaining to that suit, (doc. 63-11, pp. 9–11; see doc. 63-2, p. 17; doc. 63-6, pp. 9–10, 13–14).  Similarly, even though Alexis and Rodney Webber were served with the complaint in Underlying Lawsuit II, (see doc. 31-7), American Service was not immediately provided copies of any complaint or summons in Underlying Lawsuit II, (doc. 63-11, p. 11; see doc. 63-2, p. 17; doc. 63-6, pp. 9–10, 13–14).  Indeed, Alexis Webber stated during her deposition that she never provided American Service a copy of the complaints in Underlying Lawsuits I and II, (doc. 63-2, p. 17), and the Webber Defendants admitted, in their responses to interrogatories served by American Service, that they "did not provide American [Service] with a copy of Underlying Lawsuit[s] I [or II]," (doc. 91-1, pp. 4–5).

## III.    Procedural History

American Service filed this action on January 20, 2020, requesting "a declaration that [it] has no obligation under the Policy or otherwise to defend or indemnify any of . . . [the] Defendants from or against the Underlying Lawsuit[s] . . . or any other claim arising from the [Collision]." (Doc. 31, p. 22; see doc. 1, p. 19.)  American Service's Amended Complaint, which is the operative pleading in this case, asserts three counts of declaratory relief: (1) "Failure to Comply with the Policy's Notice Conditions Eliminates Coverage under the Policy" (Count I); (2) "The Damages are Not Covered within the Grant of Coverage" (Count II); and (3) the Webber Defendants and Morrall "Do Not Qualify as 'Insureds'" under the Policy (Count III).  (Doc. 31, pp. 16–22.)  Count I alleges that the Webber Defendants failed to comply with the Policy's Notice Conditions because

they "did not provide American [Service] or its representatives with notice of any claim within 30 days of the [Collision]" and did not "immediately send [American Service] any request, demand, order, notice, summons or legal paper received concerning the claim or [Underlying Lawsuits I and II]." (Id. at pp. 16–18.) Count II alleges that American Service has no duty to pay the damages awarded by default against Webber's LLC and Morrall in Underlying Lawsuit I because the damages are the "procedural consequence of not having appeared after being served" in that suit. (Id. at p. 19.) In other words, American Service contends, the default damages "were not caused by an 'accident' as that term is defined in the Policy, nor were their defaults 'resulting from the ownership, maintenance or use of a covered auto." (Id.) Count II also alleges that the damages sought in Underlying Lawsuit II are not covered because they are based on Alexis and Rodney Webber's failure to adequately fund or capitalize Webber's LLC. (Id. at p. 20.) Finally, Count III alleges that American Service has no obligation under the Policy to defend or indemnify the Webber Defendants or Morrall in the Underlying Lawsuits because they do not qualify as "insureds" under the Policy for the claims against them in those suits. (Id. at pp 20–22.)

On February 17, 2022, American Service filed the at-issue Motion for Summary Judgment. (Doc. 63.) The Motion has been fully briefed by the parties. (Docs. 63-1, 69, 71, 81, 91.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove its case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (citation and emphasis omitted).  Additionally, the Court is not

permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

## DISCUSSION

American Service seeks summary judgment on its request for a declaration that it is not obligated to defend or indemnify the Webber Defendants or Morrall against the Copelands' claims in the Underlying Lawsuits.[7] (Doc. 63, p. 1.) American Service argues that it has no duty to defend or indemnify the Webber Defendants or Morrall in the Underlying Lawsuits because, *inter alia*, (1) they do not meet the Policy's definition of "insureds" and (2) the Webber Defendants failed to comply with the Policy's Notice Conditions, which are conditions precedent to coverage. (Doc. 63-1, pp. 15–17, 20–22.) According to American Service, it is entitled to summary judgment on both of these grounds.[8] (Id. at pp. 17, 22.) For the reasons set forth below, the Court agrees, and, accordingly, finds that summary judgment is warranted.

## I.   Defendants Do Not Qualify as "Insureds" under the Policy (Count III)

American Service argues that the Policy does not cover the claims for damages asserted against the Webber Defendants and Morrall in the Underlying Lawsuits because none of them

---

[7] To support its Motion, American Service relies, in part, upon Defendants' purported "default admissions." (See doc. 63-1, p. 13, doc. 81, pp. 5–7; see also doc. 63-11, ¶¶ 3, 4, 12, 13, 17, 24, 28, 29, 30, 32, 33 (citing the Requests for Admissions it served upon Defendants).) American Service argues that the matters set forth in its Requests for Admissions ("RFAs") served in this action are deemed admitted under Federal Rule of Civil Procedure 36 because "[Johnson-Copeland] did not serve [her] responses to American[] [Service's] [RFAs] by the stipulated deadline of October 15, 2021, and the Webber Defendants did not respond to American[] [Service's] [RFAs]." (Doc. 63-1, p. 13; see doc. 81, pp. 5–7.) Defendants argue generally that the matters set forth in the RFAs should not be admitted under Rule 36. (See doc. 69, p. 9; doc. 91, pp. 3–4.) Because the Court finds that summary judgment is warranted based upon the record evidence and the matters deemed admitted in American Service's Statement of Material Facts, see Background Section II.C, supra, the Court declines to address this issue.

[8] American Service also contends that it is entitled to summary judgment because "[t]he damages awarded or sought [in the Underlying Lawsuits] do not fall within the [Policy's] grant of coverage." (Doc. 63-1, pp. 17–19.) The Court declines to address this argument, since American Service is entitled to summary judgment on each of the bases addressed in Discussion Sections I and II, infra.

14

qualify as "insureds" under the Policy.  (Id. at pp. 15–17; see also doc. 31, pp. 20–22.)  Under Georgia law, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms."  Hays v. Ga. Farm Bureau Mut. Ins. Co., 722 S.E.2d 923, 925 (Ga. Ct. App. 2012).  The Policy limits coverage for "all sums an '*insured*' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"  (Doc. 31-10, p. 24 (emphasis added).)  The Policy defines "insureds" as (a) "[Webber's LLC] [i.e., the named insured] for any covered 'auto', *but only when the covered 'auto' is driven by an approved driver described in paragraph (b)*" and (b) "[a]ny driver authorized by a licensing body as a taxicab driver, limousine driver, or driver of any other public livery vehicle, *while operating a covered "auto"* with [the named insured's] knowledge and consent under [the named insured's] operating authority."  (Id. at p. 68 (emphasis added).)  Paragraph (b) further provides that (1) only the drivers listed on the signed application for insurance are covered as of the date the policy begins and (2) a new driver (i.e., a driver not listed in the original application) is not covered unless and until the named insured reports he or she to American Service, and American Service "advise[s] in writing that he or she is acceptable . . . and identif[ies] that he or she is now considered . . . to be an authorized driver covered by the [P]olicy."  (Id.)  If that occurs, coverage for the newly authorized driver begins on "the date and time specified" by "the notice advising they are acceptable."  (Id.)  In sum, to qualify as an "insured" under either paragraph (a) or (b), the vehicle involved in the incident for which coverage is claimed must be a covered "auto" and must have been operated by a driver that meets paragraph (b)'s aforementioned approval requirements.  (See id.)

In the Underlying Lawsuits, the Copelands seek damages from the Webber Defendants and Morrall for injuries stemming from the Collision.  (See docs. 31-1, 31-6, 31-8.)  When the Collision

occurred, Morrall was driving the Vehicle—a covered "auto"—to pick up a patient for transport to an appointment on behalf of Webber's LLC, the named insured.  (Doc. 31-10, pp. 9, 13, 16–17, 23; <u>see</u> <u>id.</u> at p. 14.)  Therefore, Webber's LLC and Morrall cannot qualify as "insureds" under paragraphs (a) and (b), respectively, unless Morrall was an "approved driver" under paragraph (b) at the time of the Collision.  (<u>See</u> <u>id.</u> at p. 68.)  For that to be so, Morrall must either have been listed as a driver in Webber's LLC's insurance application or approved by American Service as an authorized driver under the Policy in writing before the Collision.  (<u>Id.</u>)  The undisputed facts in the record establish that neither of these occurred.  Morrall was not an approved driver at the start of the Policy period because she was not listed as a driver in Webber's LLC's application.  (Doc. 63-11, pp. 4–5; doc. 69–1, pp. 4–5; doc. 31-9, p. 15 (listing as drivers only Alexis Webber, Angel White, and Robert Williams).)  Additionally, Webber's LLC failed to report Morrall to American Service at any point, and American Service never advised Webber's LLC in writing that she was an authorized driver covered by the Policy.  (Doc. 63-11, pp. 6–7; <u>see</u> doc. 63-2, pp. 8–9, 15–16, 19.)  Accordingly, because Morrall does not satisfy the approval requirements of paragraph (b), Webber's LLC and Morrall do not qualify as "insureds" under the Policy for purposes of Johnson-Copeland's claims stemming from the Collision.

Furthermore, neither Alexis nor Rodney Webber are "insureds" under the Policy.  First, they cannot qualify as "insureds" under paragraph (a) because Webber's LLC—and neither of them—is the named insured.  (Doc. 31-10, pp. 14, 68).  Additionally, they do not qualify as "insureds" under paragraph (b)—at least for purposes of determining coverage for claims arising from the Collision—because they were not driving the Vehicle at the time of the Collision.  (Doc. 63-2, pp. 14, 19–20; <u>see</u> doc. 69-5, pp. 141–42; <u>see also</u> doc. 31-10 p. 68 (providing, in relevant

part, that licensed drivers may qualify as "insureds" "*while operating a covered 'auto '*") (emphasis added).)

Johnson-Copeland argues that "[i]f the Court were to accept . . . that . . . Morrall[] and the Webber Defendants do not qualify as insureds, it would effectively operate as if there was *never* any insurance policy issued by American Service to . . . [Webber's] LLC to begin with." (Doc. 69, p. 10.)  The Court disagrees.  Johnson-Copeland fails to appreciate that, due to the temporal limitations contained in the Policy's definition of "insureds," no person or entity—not even the named insured—qualifies as an "insured" at all times.  Under the Policy, "insureds" are only Webber's LLC "*when the covered 'auto' is driven by an approved driver*" and certain drivers "*while operating a covered 'auto'.*" (Doc. 31-10, p. 68 (emphasis added).)  As such, the fact that Morrall and the Webber Defendants are not "insured" for damages claims based upon the Collision does not negate the existence of the Policy.  Johnson-Copeland also contends that "the exclusion of Morrall as an insured under . . . [Webber's] LLC's [P]olicy should be construed in favor of coverage." (Doc. 69, p. 10.)  According to Johnson-Copeland, the Court "must strictly construe any exclusion from coverage sought to be invoked by the insurer against the insure[d] as drafter of the document." (Id. (citing Henderson v. Ga. Farm Bureau Mut. Ins. Co., 762 S.E.2d 106 (Ga. Ct. App. 2014); Landmark Am. Ins. Co. v. Khan, 705 S.E.2d 707 (Ga. Ct. App. 2011)).)  Yet, qualification as an "insured" is a prerequisite for coverage, not an "exclusion" of coverage under the Policy.  As indicated above, American Service is only required to "pay all sums an '*insured*' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies." (Doc. 31-10, p. 24 (emphasis added).)   In contrast, the Policy's "Exclusions"—which are listed separately from the definition of "insureds"— are, essentially, categories of "bodily injury" or liabilities that an *insured* remains liable for because the Policy does not apply to them. (See id. at

pp. 25–28.)  Moreover, even if disqualifying Morrall from coverage for not being an "insured" were akin to applying a coverage exclusion, the favorable construction Johnson-Copeland seeks is inapplicable.  As the sources cited by Johnson-Copeland show, Georgia courts construe coverage exclusions in favor of the insured only when their plain language is ambiguous.  See, e.g., Auto-Owners Ins. Co. v. Neisler, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015) ("In cases of ambiguity, . . . exclusions from coverage the insurer seeks to invoke are strictly construed . . . ."); Fid. Nat. Title Ins. Co. v. Keyingham Invs., LLC, 702 S.E.2d 851, 853 (Ga. 2010) ("In the absence of language in a title insurance commitment that plainly excludes coverage for a forgery, a commitment must be construed to provide coverage for forgeries.").  Johnson-Copeland has not argued, much less pointed to any language in the Policy suggesting, that the Policy's definition of "insured" is ambiguous.  (See doc. 69.)  Thus, for these stated reasons, Johnson-Copeland is not entitled to the favorable construction of the definition of "insureds" that she requests.

Based on the forgoing, American Service is entitled to a declaration that it has no duty to defend or indemnify the Webber Defendants or Morrall in the Underlying Lawsuits because they are not "insureds" for purposes of claims arising out of the Collision.  Accordingly, summary judgment is warranted on this basis.

## II.     The Webber Defendants Failed to Comply with the Policy's Notice Conditions (Count I)

American Service also argues that the Webber Defendants forfeited coverage under the Policy when they breached the Policy's Notice Conditions.  (Doc. 63-1, pp. 20–22; see also doc. 31, pp. 16–18.)  The Policy states that American Service has "no duty to provide coverage under th[e] [P]olicy unless there has been full compliance" with, inter alia, the following two Notice Conditions.  (Doc. 31-10, p. 30.)  First, Webber's LLC must, "[i]n the event of 'accident', claim, 'suit' or 'loss', . . . give [American Service] or [its] authorized representative prompt notice of the

'accident' or 'loss'" (the "Prompt Notice Condition").  (<u>Id.</u> at p. 30; <u>see</u> <u>id.</u> at p. 48.)   If this requirement is "not satisfied by the 'insured' within 30 days of the date of the 'accident', [it] may be satisfied by an injured third party who, as the result of such 'accident', has a claim against the 'insured'."  (<u>Id.</u> at p. 48.)   "However, in this event, notice of a claim given by an injured third party must be mailed to [American Service]."  (<u>Id.</u>)   Second, Webber's LLC and "any other involved 'insured'" must "[i]mmediately send [American Service] copies of any request, demand, order, notice, summons or legal paper received concerning the claim or 'suit'" (the "Legal Paper Condition").  (<u>Id.</u> at p. 30.)

Defendants do not dispute that Webber's LLC was required to "promptly notify" American Service of the Collision as well as to "immediately send" American Service legal papers concerning the Underlying Lawsuits.  (<u>See generally</u> docs. 69, 71, 91.)   The undisputed evidence shows that Webber's LLC fulfilled neither of these obligations.  <u>See</u> Background Section I & note 6 <u>supra</u> (deeming admitted the facts set forth in American Service's SMF concerning American Service's notice of the Collision and Underlying Lawsuits I and II).  Concerning the Prompt Notice Condition, Alexis Webber testified that she was made aware of the Collision when Morrall contacted her on June 15, 2018, the same day it occurred.  (Doc. 63-2, p. 11; <u>see</u> doc. 63-11, p. 9.)   Yet, Webber's LLC did not notify American Service of the Collision within 30 days of its occurrence or at any point prior to October 15, 2019, when Webber's LLC sent an e-mail to American Service containing information related to the Underlying Lawsuits.  (Doc. 63-11, pp. 9, 12; <u>see also</u> doc. 63-6, pp. 9–10; doc 57-6, p. 3. (testimony of Alexis Webber that she never communicated with American Service about the Collision).)   Furthermore, there is no evidence in the record that Johnson-Copeland ever notified American Service by mail about the Collision, and Johnson-Copeland concedes that her attorney was "unable" to do so because he was "not aware of

the existence of American Service . . . until after [it] named and served [Johnson-Copeland] as [a] defendant[] in this lawsuit." (Doc. 63-7, p. 4; <u>see</u> doc. 31-10, p. 48 (providing that an injured third party may fulfill the Prompt Notice Condition via mail if notice is not received from the "insured" within thirty days of the "accident").)

Additionally, concerning the Legal Paper Condition, Defendants concede that American Service was not immediately provided copies of any legal papers pertaining to Underlying Lawsuits I or II. (Doc. 63-11, pp. 9–11; <u>see</u> doc. 63-2, p. 17; doc. 63-6, pp. 9–10, 13–14.) In fact, Alexis Webber testified that she never provided American Service a copy of the complaints in Underlying Lawsuits I and II, (doc. 63-2, p. 17), and the Webber Defendants admit that they "did not provide American [Service] with a copy of Underlying Lawsuit[s] I [or II]," (doc. 91-1, pp. 4–5). Thus, because Webber's LLC did not fully comply with the Notice Conditions, American Service has "no duty to provide coverage under th[e] [P]olicy." (Doc. 31-10, p. 30.)

Notwithstanding, Johnson-Copeland maintains in her Response that Webber's LLC "provided notice to American Service . . . of the [Collision] itself." (Doc. 69, p. 10.) Although she does not cite to any support in the record, Johnson-Copeland presumably is referring to the phone call Alexis Webber allegedly made to American Service a day or two after the Collision. (<u>See</u> <u>id.</u> at p. 3; <u>see also</u> doc. 69–1, pp. 9–14.) As discussed in Notes 4 and 6, <u>supra</u>, there is no evidence in the record, such as a phone log, e-mail memorializing the phone call, or even sworn testimony, indicating that Alexis Webber spoke with American Service on the phone at any point after the Collision. Additionally, even if Johnson-Copeland *had* pointed to proof that Alexis Webber called American Service, Webber's LLC *still* forfeited coverage under the Policy because it failed to provide American Service the documents it received pertaining to Underlying Lawsuits I and II. (Doc. 63-11, pp. 9–11; <u>see</u> doc. 63-2, p. 17; doc. 63-6, pp. 9–10, 13–14; doc. 91-1, pp.

4–5.) In other words, it is inapposite whether Alexis Webber promptly notified American Service of the Collision— either during the purported call or through other means—because Webber's LLC clearly breached the Legal Paper Condition.

Based on the forgoing, American Service is entitled to a declaration that it has no duty to provide coverage for claims or damages arising out of the Collision because Webber's LLC breached the Notice Conditions, which are conditions precedent to Policy coverage. Accordingly, summary judgment is warranted on this basis.

<strong>CONCLUSION</strong>

For the forgoing reasons, the Court **GRANTS** Plaintiff American Service's Motion for Summary Judgment. (Doc. 63.) The Court **DENIES as moot** American Service's Motion for Default Judgment as to Discovery Sanction, (doc. 64), and Motion for Default Judgment as to Defendant Quantella J. Morrall, (doc. 65). The Court also **DENIES** Johnson-Copeland's Motion for Hearing Regarding American Service's Motion for Summary Judgment. (Doc. 83.) The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Plaintiff and to **CLOSE** this case.

**SO ORDERED**, this 26th day of August, 2022.

_____

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA